**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CEASAR TRICE, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 2:21-cv-439 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Patricia L. Dodge |
| SUPT. CLARK, SCI Albion, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM</u>**

Pending before the Court[1] is the Petition for a Writ of Habeas Corpus (ECF 1) filed by Petitioner Ceasar Trice under 28 U.S.C. § 2254. For the reasons below, the Court will deny the Petition with prejudice because each of Trice's claims for habeas relief are time-barred and will deny a certificate of appealability.

**I.     Relevant Background**

In this habeas case, Trice challenges the judgment of sentence imposed on him in 2008 in the Court of Common Pleas of Allegheny County at criminal docket number CP-02-CR-18839-2006. The criminal charges against Trice and his co-defendants, Anthony Nelson and Dejuan Mitchell,[2] stemmed from events that occurred on November 25, 2006 in West Mifflin Borough, when one individual was shot and killed and several others were injured.

Trice was charged with one count of homicide and various other crimes arising from the incident. The trial court appointed Attorney James Wymard ("trial counsel") to be Trice's attorney.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Going forward, the Court will refer to Dejuan Mitchell and his cousin Damile Mitchell by their first names because they share the same last name.

Trice, who was 17 years old at the time of the shooting (Decertification Hr'g Tr., 8/14/07, at 6), moved to transfer his case to juvenile court.[3] The trial court denied the motion after holding a decertification hearing on the matter.

Trice and Nelson's joint trial was held in July 2008. DeJuan, who previously pleaded guilty to third-degree murder, burglary, and criminal conspiracy, testified as a witness for the prosecution.

The Superior Court of Pennsylvania summarized the evidence at the trial as follows:

> The factual background of this case arises from a dispute between a drug dealer and his customers. Trice, who was a juvenile at the time, was a regular supplier of drugs to the residents of a home in West Mifflin Borough ("the Cardamone home"). Dominic Cardamone resided in a third floor, attic apartment with his significant other, Heidi Stipetich. Their son, John Cardamone, then 27, lived on the second floor with his girlfriend, Kimmerly Messenger. John's brother, Aaron Cardamone, then 25, lived in a separate room on the same floor, while a friend of the family, Heidi Schindler, slept in the living room on the first floor.
>
> In the early morning of November 25, 2006, Trice made a sales call to the Cardamone home. However, instead of consummating the transaction, John Cardamone and Kimmerly Messenger took him to the second floor and severely beat him, taking $150 in cash as well as his narcotics. Trice left the Cardamone home and was eventually transported to a nearby hospital to have the wound in his head closed with nine staples.
>
> While Trice was being treated, a colleague, Dejuan Mitchell, took a gun and shot at the second and third story windows of the Cardamone home. No one was injured in the shooting, and [Dejuan] left the scene.
>
> Shortly thereafter, police arrived on the scene, responding to a "shots fired" report. Officers observed bullet holes in the Cardamone home, and knocked on the door. None of the residents answered immediately, as they were all in the third floor apartment, with at least a few getting high on narcotics stolen from Trice. Eventually, Stipetich went to the door and told police that she had not contacted police because she couldn't find her phone, and furthermore, that she had no idea regarding the identity of the shooter. The police left the scene, and the residents of the Cardamone home eventually fell asleep. However, at some time after 9 a.m., Heidi Schindler, who was sleeping in the first floor living room, was woken by

---

[3] At times during the trial, Trice's counsel incorrectly stated that Trice was 15 years old at the time the crimes were committed for which he was being tried. Trice's birthday (which is in May 1989) is noted in the state court record, confirming that he was 17 in November 2006. And at the decertification hearing trial counsel correctly stated that Trice was 17 years old on the date the crimes were committed.

three intruders. One of the intruders, Anthony Nelson, held a rifle to Schindler's mouth and ordered her to sit up. Another intruder, [Dejuan], told Nelson [to] leave Schindler alone, as "she had nothing to do with this." After [Dejuan] and Nelson went upstairs, Schindler heard approximately twelve shots fired, and then saw [Dejuan] and Nelson run back down the stairs. She was unsure if the third intruder, whom she could not identify, had gone upstairs with Nelson and [Dejuan], or whether he had remained downstairs.

[Dejuan] testified that after Trice returned from the hospital, he asked Nelson and [Dejuan] to accompany him to the Cardamone home to retrieve his property. After the three broke into the house and confronted Schindler, Nelson passed the gun to Trice, and [Dejuan] and Trice proceeded upstairs. [Dejuan] stated that while he was searching Aaron Cardamone's room, Trice came in and shot Aaron several times. [Dejuan] fled down the stairs, hearing more gun shots as he fled.

Kimmerly Messenger and John Cardamone also suffered significant gunshot injuries but survived the assault. Aaron Cardamone was pronounced dead at the hospital from the gunshot wounds he received.

*Commonwealth v. Trice*, No. 1321 WDA 2014, slip op. at 1-3 (Pa. Super. Ct. Nov. 2, 2015) ("*Trice II*")[4] (ECF 14-4 at 37-39).

Trice's defense at trial was that the prosecution failed to satisfy its burden of proving his guilt beyond a reasonable doubt. In his closing argument, Trice's trial counsel urged the jury not to credit the testimony offered by the prosecution from Dejuan and the other witnesses who were at the Cardamone's house the night of the crimes. As discussed below, Trice now claims that Dejuan's cousin, Damile, went with him and Dejuan to the Cardamone's home and that Damile was the one who shot the victims. Trice has not directed this Court to anything that shows that he claimed at his trial that Damile went with him to the Cardamone's home or that Damile was involved in any way in the crimes, however.

At the end of the trial, the jury convicted Trice of third-degree murder (Aaron Cardamone), two counts of aggravated assault (John Cardamone and Kimmerly Messenger), and criminal

---

[4] The Superior Court issued four decisions discussed here, and this Court has numbered them sequentially in order of the date they were issued. Since the Superior Court's 2015 decision was the second decision it issued in Trice's case, this Court refers to that decision as "*Trice II*."

trespass. The jury found Trice not guilty of the crimes of first-degree murder, second-degree murder, burglary, simple assault (Heidi Schindler) and criminal conspiracy.[5]

The trial court sentenced Trice to an aggregate term of 32 to 64 years' imprisonment. Attorney Eric A. Jobe ("direct appeal counsel") represented Trice in his appeal to the Superior Court. In this direct appeal, Trice claimed that the trial court committed reversible error when it denied two motions for mistrials, and also when it allowed the prosecution to introduce DeJuan's prior recorded statement. In *Commonwealth v. Trice*, No. 1932 WDA 2008 (Pa. Super. Ct. July 8, 2011) ("*Trice I*") (ECF 14-2 at 23-35), the Superior Court rejected the mistrial claims on the merits and held Trice waived the claim related to DeJuan's statement.

Trice did not file a petition for allowance of appeal in the Supreme Court of Pennsylvania following the Superior Court's decision in *Trice I*. Thus, his judgment of sentence became final under both state and federal law on or around August 8, 2011, when the 30-day period for him to file a petition for allowance of appeal expired. Pa.R.A.P. 1113(a) (setting forth the 30-day period for filing a petition of allowance of appeal); 42 Pa.C.S. § 9545(b)(3); 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 149-50 (2012) (a judgment becomes final at the conclusion of direct review or the expiration of time for seeking such review).

On June 11, 2012, Trice filed a pro se petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. The trial court, now the PCRA court, appointed Attorney Christy Foreman to represented him. Trice then filed a counseled amended PCRA petition raising these claims:

1. trial counsel was ineffective for failing to preserve the claim that the jury's verdicts were against the weight of the evidence; and

---

[5] The jury found Nelson guilty of the criminal trespass and not guilty of the crimes of first and second-degree murder, burglary, simple assault (Heidi Schindler) and criminal conspiracy.

2. direct appeal counsel was ineffective for: (a) waiving a sufficiency of the evidence claim; (b) failing to raise the claim that the trial court erred in allowing hearsay testimony from Dr. Shakir regarding the autopsy performed by Dr. Omalu; (c) failing to order the transcript from the decertification hearing, which resulted in the waiver on direct appeal of the claim related to that hearing; and (d) failing to raise a challenge to the admission of DeJuan's prior recorded statement based on the evidentiary objection made at trial, and instead challenging the admission on a basis that was not preserved at trial.

(ECF 14-3 at 6-7.)

The PCRA court held an evidentiary hearing on July 16, 2014, at which trial counsel, direct appeal counsel, and Trice testified. Following this hearing, the PCRA court denied Trice's amended PCRA petition. (ECF 14-1 at 12; *see also* ECF 14-3 at 29-38.)

In Trice's appeal to the Superior Court, he asserted that the PCRA court erred in denying his claims that: (1) the trial counsel was ineffective for failing to preserve the weight of evidence claim; and (2) direct appeal counsel was ineffective for failing to (a) raise the proper challenge to the admission of Dejuan's statement and (b) order the transcript from the decertification hearing. (ECF 14-4 at 1-36.) In *Trice II*, the Superior Court rejected these claims on the merits and affirmed the PCRA court's decision. (*Id.* at 37-46.) Trice then filed a petition for allowance of appeal, which the Supreme Court of Pennsylvania denied on March 22, 2016. (*Id.* at 49.)

Several days beforehand, on March 20, 2016, Trice filed a second *pro se* PCRA petition in which he contended that Attorney Forman provided him with ineffective assistance during the litigation of his first PCRA proceeding. The PCRA court dismissed this petition as untimely. On appeal, the Superior Court affirmed the dismissal but on a different basis, concluding that the PCRA court lacked jurisdiction to rule on the second petition because it was filed while the first petition was still pending. *Commonwealth v. Trice*, No. 1465 WDA 2016, slip op. at (Pa. Super. Ct. Jan. 4, 2018) ("*Trice III*") (ECF 14-6 at 57-59.)

Next, on January 29, 2018, Trice filed a third *pro se* PCRA petition specifically under 42 Pa.C.S. § 9543(a)(2)(vi) in which he claimed he was entitled to a new trial based on alleged "newly discovered" evidence of his innocence provided to him by Dejuan's cousin, Damile Mitchell.[6] The PCRA court, appointed Attorney William C. Kaczynski to represent Trice in this third PCRA proceeding. Trice then filed a counseled amended PCRA petition that attached an affidavit signed by Damile on January 11, 2018. (ECF 14-5 at 2-23.) In this affidavit, Damile

---

[6] The PCRA at § 9543(a)(2) lists what types of substantive claims may be litigated in a post-conviction proceeding. Of relevance to Trice's third PCRA proceeding are claims alleging "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi); *see also Albrecht v. Horn*, 485 F.3d 103, 123 (3d Cir. 2007) (describing this provision of the PCRA as "the provision of the state post-conviction relief act dealing with claims of innocence based on after discovered evidence."). In his third PCRA proceeding, Trice asserted that he was raising an "after-discovered evidence" claim of innocence under § 9543(a)(2)(vi). (ECF 14-5 at 1-18.) To establish such a claim under Pennsylvania law, a petitioner must prove that (1) the evidence has been discovered after trial and it could not have been obtained prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. Cox*, 146 A.2d 221, 227-30 (Pa. 2016).

Importantly, § 9543(a)(2)(vi) does not have a counterpart in the federal habeas statute. As discussed below, although a credible claim of actual innocence in a federal habeas case can act as a "gateway" through which a federal habeas petitioner may pass to have an otherwise time-barred or procedurally barred constitutional claim considered on the merits, *Schlup v. Delo*, 513 U.S. 298 (1995); *McQuiggin v. Perkins*, 569 U.S. 383 (2013), neither the Supreme Court nor the Court of Appeals for the Third Circuit has held that a freestanding claim of actual innocence is cognizable under 28 U.S.C. § 2254. As the Third Circuit has explained, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht*, 485 F.3d at 121-22. More recently, the Third Circuit has noted: "The Supreme Court has 'repeatedly left that [issue] unresolved, while expressing considerable doubt that any claim based on alleged 'actual innocence' is constitutionally cognizable.'" *Marcy v. Sup't Phoenix SCI*, 110 F.4th 210, 219 (3d Cir. 2024) (quoting *In re Davis*, 557 U.S. 952, 955 (2009) (Scalia, J., dissenting)). "Whatever the contours of such a right, it would entail an 'extraordinarily high' burden of proof—one so high that no petitioner in [the Third Circuit] nor the Supreme Court has ever met it." *Id.* (citing *Herrera*, 506 U.S. at 417).

6

claimed that it was he, and not Trice, who shot the victims in the case, including the decedent. (*Id.* at 23.)

The PCRA court held an evidentiary hearing on February 26, 2019 at which Damile was the sole witness to testify. (ECF 17-1.) Damile stated that he was an inmate in the custody of the Pennsylvania Department of Corrections and serving a life sentence for an unrelated homicide conviction. (*Id.* at 8, 31.) Trice and Damile were housed in the same state correctional institution, but according to Damile he had had no contact with Trice until January 2018. (*Id.* at 10-14, 33-34.) Damile said he prepared his January 2018 affidavit because he wanted to "make amends to [Trice.]" (*Id.* at 14.)

Damile testified that on November 25, 2006, he went with Dejuan and Trice to the Cardamone's home to help retrieve Trice's property. (*Id.* at 16-20.) According to Damile, he, Dejuan and Trice "approached the house. All the lights [were] out, so we went around back and proceeded to break in." (*Id.* at 18.) Damile and Dejuan entered the house, Damile said, while Trice stayed outside. (*Id.* at 19-20.)

Damile also testified that Trice did not know that he had a gun on him and that they did not have a discussion beforehand about shooting anyone. Damile said that he was the one that shot the victims inside the house. (*Id.* at 20-24.) When he was fleeing after the shootings, Damile said, he tripped and dropped his gun, leaving it at the scene. (*Id.* at 24.)

During cross-examination, Damile testified that the night of the shootings he was the only one that handled the gun. (*Id.* at 42.) When asked to explain why, if his version of events was true, Trice's fingerprints were on the gun's trigger, Damile suggested that Trice must have used it "prior to [the incident]." (*Id.*) Damile also admitted that he did not know Trice before the incident, however. (*Id.*)

Following the hearing, the PCRA court issued an order dismissing Trice's third petition as untimely under the PCRA's one-year statute of limitations at 42 Pa.C.S. § 9545(b)(1)(ii), which is jurisdictional and provides:

> (1) Any petition under this subchapter, including a second or subsequent petition, *shall be filed within one year of the date the judgment becomes final*, unless the petition alleges and the petitioner proves that:
> - - -
>> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]

(Emphasis added).

The PCRA court held that Trice "has failed to establish that the facts upon which the claim is predicated, that is the alleged involvement of Damile Mitchell in the homicide, were unknown to [Trice] or could not have been ascertained by the exercise of due diligence. Therefore, [Trice] has failed to establish the exception [for 'newly-discovered' evidence] under 42 Pa.C.S. § 9545(b)(1)(ii) to the one-year time period for filing a PCRA petition, including a second or subsequent petition, applies and the Petition is therefore untimely." (ECF 14-6 at 8.) The PCRA court further held that, "[i]n addition, *the testimony of Damile Mitchell that he committed the homicide and that [Trice] did not shoot the victims is not credible.*" (*Id.*) (emphasis added).

In its subsequent Rule 1925(a) opinion, the PCRA court elaborated on why it found Damile's PCRA hearing testimony to not be credible:

> The Court finds [Damile's] testimony incredible as follows: that [Damile] received a call from his cousin [Dejuan] and with no more information than that he was to help an unknown friend retrieve unknown property from an unknown location, [Damile] gets his gun because it was "serious"; that he joined [Dejuan] and Trice in a jitney and concealed his weapon during the ride to the unknown location and never discussed the possibility of any shooting when they arrived; that upon arrival at the house [Damile], [Dejuan] and Trice proceeded to the back of the house and Trice kicked in the glass to gain entry, but then suddenly retreated, which was completely unexpected by [Damile], and that [Damile] and [Dejuan] then proceeded to enter the Cardamone home themselves; that Trice, the person who

was allegedly beaten and robbed earlier in that day, retreats from the house and waits in the car with the jitney driver; that [Damile], in his detailed affidavit which is intended to exonerate Trice from the shooting, fails to state in the affidavit that Trice never entered the house; that when [Damile] gets to the second floor of the house and his cousin points out someone who was involved in "taking somebody's property," that [Damile] was "already a little faded out" because Trice hadn't come in the house and the whole incident was "stupid," begins firing at a man laying prone on the bed; that without any further discussion [Damile] hears sounds in the next bedroom and then proceeds to the second bedroom and fires four shots into the bedroom before running; that he fails to identify Anthony Nelson, who the victims identified as being in the house, instead contending that it was only he and [Dejuan] that entered the house; that although [Damile] alone had a gun and dropped it while running from the scene, he had no credible explanation as to how Trice's fingerprint could be on the gun; that more than 11 years after the shooting [Damile] happens to see Trice in passing in the Albion yard and with absolutely no communication between himself and Trice, or anyone on Trice's behalf, produces a detailed typed affidavit completely exonerating Trice and hands it to him, again in passing, with no other comment other than he was "going to make amends."

Accordingly, this Court finds [Damile's] testimony regarding the preparation of the affidavit and statements in the affidavit, as well as his testimony at the PCRA hearing, is not credible and there is no basis for granting a new trial.

(ECF 14-5 at 39-41.)

The Superior Court affirmed the PCRA court's decision in *Commonwealth v. Trice*, No. 684 WDA 2019, slip op. (Jan. 8, 2020) ("*Trice IV*") (ECF No. 14-6 at 43-53.) It rejected Trice's attempt to invoke the exception to the PCRA's one-year limitations period for "newly-discovered" evidence under § 9545(b)(1)(ii), holding:

Due diligence demands petitioners take reasonable steps to protect their own interests. *See Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001). "This rule is strictly enforced." *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa. Super. 2010). "The focus of the exception is on the newly[-]discovered facts, not on a newly[-]discovered or newly willing source for previously known facts." *Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008). This Court will not grant relief under section 9545(b)(1)(ii) where the ostensible "newly[-]discovered" evidence comes in the form of a witness offering facts which were previously known to the petitioner at the time of trial and left unexamined. *See Commonwealth v. Johnson*, 945 A.2d 185, 190-91 (Pa. Super. 2008) (declining to apply section 9545(b)(1)(ii) where petitioner offered facts concerning his dealings with co-conspirator which did not offer new information); and compare *Commonwealth v. Brown*, 111 A.3d 171, 178 (Pa. Super. 2015) (finding petitioner failed to exercise due diligence where he "made no claim that he attempted to contact [the purported exculpatory witness] at any point since trial to determine whether [the witness] had

any information regarding the day of the shooting.") with [*Commonwealth v. Hart*, 199 A.3d 475, 481 (Pa. Super. 2018)] (finding petitioner properly invoked section 9545(b)(1)(ii) where petitioner did not know of the existence of letters not disclosed by Commonwealth during discovery and asserted letters could not have been obtained through due diligence as they were stored in restricted access files.).

Whether one credits the facts gleaned from Damile's affidavit or his testimony—sources which offer an inconsistent account insofar as whether Trice entered the Cardamones' house—Trice's evidence unequivocally places him with Damile at the Cardamones' house during the shootings. *See* Affidavit, 1/11/18, at 1 ("We went to the back door and [Trice] started knocking and no one answered. He then kicked in the glass that was on the door to unlock it. Then that's when we went in."); *see also* N.T. PCRA Hearing, 2/26/1[9], at 19-20 (stating Trice remained outside the Cardamone's house while Damile and Dejuan entered). Trice's argument, that Damile's role in the shootings was previously unknown to him, is, therefore, on its own terms, nonsensical. *See* Brief of Appellant, at 22 ("The exculpatory evidence was completely unavailable until after the affidavit was made public by [Damile] handing [the affidavit] to Trice…. The affidavit averred new facts including that it was solely [Damile] who had shot the three victims inside the house[.]"). As Trice pleaded facts which were previously known to him and were discoverable with the exercise of due diligence, he cannot circumvent the PCRA's time bar under Section 9545(b)(1)(ii). *See Johnson*, *supra* at 190-91; *see also Brown*, supra at 178.

(*Id.* at 51-53.)

Because the Superior Court determined that Trice's third PCRA petition was untimely, it did not engage in a merits analysis of his claim to determine whether he had shown that he was entitled to PCRA relief on his actual innocence claim under § 9543(a)(2)(vi).[7] (*Trice IV*, ECF 14-6 at 51) (quoting *Hart*, 199 A.3d a 481) ("The newly-discovered facts exception [to the PCRA's one-year statute of limitations], Section 9545(b)(1)(ii), relates to whether a court has jurisdiction to consider an untimely petition. It does not require a merits analysis.").

Trice filed a petition for allowance of appeal following the Superior Court's decision in *Trice IV*. The Supreme Court of Pennsylvania denied it on June 1, 2020. (ECF 14-6 at 54-59.)

_____

[7] The Superior Court "not[ed] with disfavor that both the PCRA court and the Commonwealth mistakenly apply the four-factor test for obtaining PCRA relief on the merits as dictated by 42 Pa.C.S.A. § 9543(a)(2)(vi), and not the two-factor test for determining whether the PCRA court has jurisdiction to hear a facially untimely PCRA petition under Section 9545(b)(1)(ii)." (*Trice IV*, ECF 14-6 at 49).

Trice filed his Petition for a Writ of Habeas Corpus (ECF 1) in this case on March 30, 2021,[8] the date he signed the Petition and asserts he placed it in the prison mailing system. (*Id.* at 15.) Trice raises the following claims:[9]

- his case should have been transferred to juvenile court (Claim 1);

- there was insufficient evidence introduced at trial to support the jury's verdicts (Claim 2);

- the jury's verdicts were against the weight of the evidence (Claim 3);

- the trial court erred when it permitted the prosecution to introduce Dejuan's recorded statement (Claim 4) and also when it denied the defense's motion for a mistrial, which was made after an outburst from a mother of one of the victim (Claim 5);

- his sentence was illegal (Claim 6) and excessive (Claim 7);

- trial counsel was ineffective for failing to raise a weight of the evidence claim in post-sentence motions (Claim 8);

---

[8] Not long after the Clerk of Court opened the instant case, Trice filed a second habeas action in this Court at *Trice v. Sec. Wetzel, et al.*, No. 2:21-cv-527 (W.D. Pa.) The petition for a writ of habeas corpus Trice filed in that case was in all relevant respects the same as the one he filed in this case, with the only difference between the two petitions being the signature date (the petition Trice filed in this case contains a signature date of March 30, 2021 and the second petition contains a signature date of February 22, 2021). Because the second habeas petition Trice filed at No. 2:21-cv-527 was duplicative of the earlier-filed petition he had filed in this case, the Court consolidated the two cases and directed that all future filings shall occur at this habeas case. As explained below, Trice's habeas claims are untimely by many years. Thus, his claims are untimely even if the Court deemed them to have been filed on February 22, 2021, the date he asserts he placed in the prison mail the petition filed at No. 2:21-cv-527.

[9] In the Petition, Trice grouped ten claims under the section where he was to separately state each ground for relief. (ECF 1 at 5-7.) In the Answer (ECF 14), Respondents list each of Trice's claims and number them Claims 1 through 10. For ease of reference, the Court has done the same here.

In what Respondents refer to as Claim 11, they note that it appears that Trice also is raising a freestanding claim of actual innocence. (ECF 14 at 10.) As explained above, such a claim in not cognizable in a federal habeas action. In any event, in his Reply, Trice clarifies that the is not bringing freestanding claim of actual innocence. (ECF 22 at 4-5.) Rather, Trice explains, he is contending that he is factually innocent as part of his "gateway" claim which, as discussed below, he brings in support of his argument that the Court should excuse the fact that he filed Claims 1 through 10 outside the applicable one-year statute of limitations.

- direct appeal counsel was ineffective for failing to raise the appropriate argument in support of the claim that the trial court erred in permitting the introduction of Dejuan's recorded statement (Claim 9) and also for failing to properly raise the decertification issue (Claim 10).

(ECF 1 at 5, 7.)

Respondents have filed the Answer (ECF 14) and the state court record, and Trice has filed the Reply (ECF 22).

## II.    Discussion

### A.    Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. This statute permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution … of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *Id.*; *see, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is Trice's burden to prove that he is entitled to the writ. *See, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

### B.    Statute of limitations

In 1996, Congress made significant amendments to the federal habeas statutes with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Among other things, AEDPA set a one-year limitations period for filing a federal habeas petition. *See Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005).

AEDPA's statute of limitations is codified at 28 U.S.C. § 2244(d). It requires, with a few exceptions not applicable here, that habeas corpus claims under 28 U.S.C. § 2254 be filed within one year of the date the petitioner's judgment of sentence became final. 28 U.S.C.

§ 2244(d)(1)(A).[10] AEDPA also provides that "[t]he time during which a *properly filed application for State post-conviction* or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added).

As discussed above, Trice's judgment of sentence became final on or around August 8, 2011, when the time expired to file a petition for allowance of appeal following the Superior Court's decision in *Trice I*. The one-year limitations period for each of Trice's claims began to run on that date. 28 U.S.C. § 2244(d)(1)(A). Trice filed his first, and only properly filed, PCRA petition 308 days later, on June 11, 2012. Under § 2244(d)(2), this first PCRA proceeding statutorily tolled ADEPA's limitations period beginning on June 11, 2012. This PCRA proceeding remained pending through March 22, 2016, the date the Supreme Court of Pennsylvania denied Tice's petition for allowance of appeal following the Superior Court's decision in *Trice II*. *Lawrence v. Florida*, 549 U.S. 327, 331-36 (2007) (a petitioner is not entitled to statutory tolling for the period available to petition for writ of certiorari to the United States Supreme Court following state collateral review); *Swartz v. Meyers*, 204 F.3d 417, 419-20 (3d Cir. 2000) (same).

AEDPA's limitation period began to run again the next day, on March 23, 2016. Because 308 days had already expired from the limitations period, Trice had 57 more days—until on or around May 19, 2016—to file timely claims in a federal habeas petition. As set forth above, the instant petition was filed on March 30, 2021, almost five years later. Thus, all of Trice's claims are untimely.

---

[10] The date on which AEDPA's one-year limitations period commenced is determined on a claim-by-claim basis. *Fielder v. Varner*, 379 F.3d 113, 118-22 (3d Cir. 2004). In this case, the statute of limitations for each of Trice's claims began to run on the date his judgment of sentence became final in accordance with § 2244(d)(1)(A). The remaining provisions of § 2244(d)(1) do not apply to any of Trice's claims. 28 U.S.C. § 2244(d)(1)(B)-(D).

Neither Trice's second nor his third PCRA proceeding qualifies as a "properly filed application for State post-conviction or other collateral review" and therefore neither of those proceedings tolled AEDPA's statute of limitations period under § 2244(d)(2). That is because, as explained above, the Superior Court determined that the PCRA court lacked jurisdiction over the second PCRA petition and that the third PCRA petition was untimely under state law. A PCRA petition rejected by a state court for lack of jurisdiction (Trice's second PCRA petition) or as untimely (his third PCRA petition) is not "properly filed" for § 2244(d)(2) purposes and therefore will not toll AEDPA's statute of limitations. *Pace*, 544 U.S. at 414, 417; *Satterfield v. Johnson*, 434 F.3d 185, 192 (3d Cir. 2006). Moreover, the third PCRA petition was filed after AEDPA's statute of limitations expired, so it could not toll the limitations period under § 2244(d)(2) for that reason as well.

Trice concedes that all of his habeas claims are untimely but asserts that the Court must excuse his failure to comply with AEDPA's limitations period because he is innocent. (ECF 1 at 13; ECF 2 at 22; ECF 22 at 3-8.) In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court recognized that the actual-innocence "gateway" to federal habeas review developed in *Schlup v. Delo*, 513 U.S. 298 (1995) for procedurally defaulted claims extends to cases in which a petitioner's claims would otherwise be barred by the expiration AEDPA's one-year statute of limitations.[11] This exception provides that a petitioner's failure to comply with AEDPA's one-year limitations period may be excused if the petitioner presents evidence of "actual innocence" that is

---

[11] The Supreme Court has also held that AEDPA's limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner is entitled to equitable tolling only if he shows both that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Id.* at 649. Trice does not argue that he is entitled to equitable tolling, nor has he directed the Court to anything in the record to support a determination that equitable tolling would be appropriate here.

"so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" *Schlup*, 513 U.S. at 316. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. To pass through this gateway, the petitioner must persuade the court that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386. Actual innocence refers to factual innocence, not legal insufficiency. *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (citation omitted).

The Supreme Court's ruling in *McQuiggin* was "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." 569 U.S. at 392-93 (quoting *Herrera*, 506 U.S. at 404). It held that the "actual innocence" exception will apply only to a "severely confined category" of cases," *id.* at 395, and instructed "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

In *Reeves v. Fayette SCI*, 897 F.3d 154 (3d Cir. 2018), the Third Circuit explained:

> To satisfy this standard, first, "a petitioner must present *new, reliable evidence*" and second, "show by a preponderance of the evidence 'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence,'" *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (citing and quoting *Schlup*, 513 U.S. at 324, 327, 115 S. Ct. 851), or stated differently, that it is "more likely than not any reasonable juror would have reasonable doubt," *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L.Ed.2d 1 (2006). *As part of the reliability assessment of the first step, the court "may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence," as well as the circumstances surrounding the evidence and any supporting corroboration. Id.* at 537, 551, 126 S. Ct. 2064

(internal quotation marks and citation omitted); *see also McQuiggin*, 569 U.S. at 399, 133 S. Ct. 1924.

  In evaluating the second step—whether it is more likely than not no reasonable juror would convict the petitioner—the court "must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House*, 547 U.S. at 538, 126 S. Ct. 2064 (internal quotation marks and citation omitted).... [N]ew, reliable evidence that "undermine[s] the [trial] evidence pointing to the identity of the [perpetrator] and the motive for the [crime]" can suffice to show actual innocence. *Goldblum v. Klem*, 510 F.3d 204, 233 (3d Cir. 2007); *see also Munchinski*, 694 F.3d at 336-37 (explaining that actual innocence was demonstrated where new evidence both showed that the crime could not have happened in the way the Commonwealth presented at trial and provided an alternative theory that was more appropriate and better fit the facts of the case). In weighing the evidence, "[t]he court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors"; the actual innocence standard "does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538, 126 S. Ct. 2064.

*Id.* at 160-61 (some bracketed text in *Reeves*) (emphasis added).

  In support of his actual innocence "gateway" claim, Trice relies on Damile's 2018 confession, the subject of Trice's third PCRA petition. This evidence is insufficient to open the actual-innocence gateway.

  Damile's alleged involvement in the crimes for which Trice was convicted is not "new." Although Damile did not come forward with his confession until 2018, if in fact Damile went with Trice and Dejuan to the Cardamone's house and shot the victims, then Trice knew those things at the time of his trial. Yet, as the state courts noted, he did not attempt to establish those facts at his trial.

  In any event, the credibility of Damile's version of events is the critical failing here. The PCRA court heard Damile's testimony and found his confession "not credible." (ECF 14-6 at 8;

*see also* ECF 14-5 at 39-41.) Under 28 U.S.C. § 2254(e)(1),[12] this Court is bound by the credibility determinations and findings of fact made by the PCRA court unless Trice produces "clear and convincing evidence" to rebut this presumption. *See also Vickers*, 858 F.3d at 850 n.9 (even in pre-AEDPA cases, "'federal habeas courts [had] no license to redetermine credibility of witnesses who demeanor ha[d] been observed by the state trial court, but not by them,'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (bracketed text added by the Third Circuit)). Although there can be the rare case in which "[a] federal court can disagree with a state court's credibility determination and… conclude the decision…was incorrect by clear and convincing evidence [under § 2254(e)(1),]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003), this case is not one of them. There is no basis on the record before this Court to determine that Trice has overcome the presumption of correctness this Court must afford to the PCRA court's credibility determination.

Trice argues that the PCRA court's credibility determination was "disfavored" by the Superior Court and thus is not binding. (ECF 22 at 3.) This is a mischaracterization of the Superior Court's holding in *Trice IV*, however. The Superior Court noted that, in its jurisdictional analysis, the PCRA court mistakenly applied the test for obtaining PCRA relief on the merits (under § 9543(a)(2)(vi)) of an after-discovered evidence claim instead of the test for determining whether a timeliness exception at § 9545(b)(1)(ii) for newly discovered facts applied. (*Trice IV*, ECF 14-6 at 49.) While this holding suggests that the PCRA court's credibility determination was

---

[12] Section 2254(e)(1), as amended by AEDPA, provides that in a habeas case filed by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

superfluous to its jurisdictional analysis under § 9545(b)(1)(ii), the Superior Court did not disturb that determination.[13]

Trice also describes how Damile's testimony comported with trial evidence. (ECF 22 at 6-8.) His directs this Court to descriptions of testimony which do not appear to conflict with Damile's version of events but do not *per se* support it. None of this amounts to clear and convincing evidence that the PCRA's credibility determination was wrong.

Finally, Trice criticizes the PCRA court's credibility determination, arguing, "[t]he PCRA Court simply put forth his own findings of incredulous [sic] testimony in place of the sole [] factfinders, which is the jury." (ECF 22 at 8.) At the evidentiary hearing before the PCRA court, the court was the relevant factfinder. And, for the reasons discussed above, this Court must defer to the PCRA court's credibility determination when this Court makes its own evaluation of whether Trice's "new" evidence is "reliable" under the *Schlup/McQuiggin* standard.

In conclusion, Trice has not rebutted the presumption that the PCRA court's credibility determination is correct. Accordingly, this Court is bound by that determination. The PCRA court found Damile's 2018 confession, the evidence on which Trice relies to demonstrate his actual innocence, to be unreliable. Thus, the actual-innocence gateway is unavailable to Trice and therefore all of his claims time-barred. For this reason, the Court will deny the petition.

### III.  Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of

---

[13] Under Pennsylvania law, where there is support for a PCRA court's credibility determinations, the reviewing appellate court is bound by those determinations. *See, e.g.*, *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 93 (Pa. 1998).

a constitutional right." 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable whether Trice's claims should be denied as untimely. Thus, a certificate of appealability is denied with respect to his claims.

## IV.   Conclusion

The Court will deny the Petition because the federal habeas claims asserted in it are time-barred and will deny a certificate of appealability.

An appropriate Order follows.


Date:   August 29, 2024                          /s/ Patricia L. Dodge
                                                 PATRICIA L. DODGE
                                                 United States Magistrate Judge